*E-FILED: March 5, 2013*

NOT FOR CITATION

IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

SAN JOSE DIVISION

BRIAN CHENG,

           Plaintiff,

    v.

MICHAEL J. ASTRUE, Commissioner of Social Security,

           Defendant.
_____/

No. C10-03605 HRL

**ORDER DENYING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT AND GRANTING DEFENDANT'S CROSS-MOTION FOR SUMMARY JUDGMENT**

**[Re: Docket No. 25, 28]**

In this Social Security action, plaintiff Brian Cheng appeals a final decision by the Commissioner of Social Security Administration ("defendant" or "Commissioner") granting in part, and denying in part, his application for Social Security disability insurance benefits. Presently before the court are the parties' cross-motions for summary judgment. The matter is deemed fully briefed and submitted without oral argument. Pursuant to 28 U.S.C. § 636(c) and Fed. R. Civ. P. 73, all parties have expressly consented that all proceedings in this matter may be heard and finally adjudicated by the undersigned. Upon consideration of the moving papers, and for the reasons set forth below, plaintiff's motion for summary judgment is denied and defendant's motion for summary judgment is granted.

## I. BACKGROUND

Brian Cheng was 42 years old when the Administrative Law Judge ("ALJ") rendered the decision under review in this action. Administrative Record ("AR") 140, 44. His prior work experience includes work as a Lab Technician and Delivery Person in a denture lab, work as a Sales and Delivery Person for a wholesale distributor, work as a Produce Clerk in a grocery store, work as a Manager at an audio store, work as a Film Processing Technician, and work as an Attendant at a

United States District Court
For the Northern District of California

gas station.  AR 151.  He claims disability since June 13, 2006, when he suffered severe injuries in a motor vehicle accident that broke his neck, left leg, and ankle.  AR 144.  Plaintiff filed an application for Social Security disability benefits, claiming to be disabled as of the date of the car accident due to resulting vision problems and sustained injuries to his neck, back, left ankle and leg.  AR 144.  Plaintiff's claim was denied initially and upon reconsideration.  He timely filed a request for hearing before an ALJ.

In a decision dated April 6, 2009, the ALJ found that the plaintiff was disabled under the Social Security Act from June 13, 2006 to July 19, 2007, but that his residual functional capacity ("RFC") improved thereafter to allow Cheng to perform sedentary work.  AR 41.  The ALJ evaluated plaintiff's claim of disability using the five-step sequential evaluation process for disability required under federal regulations.  *See* 20 C.F.R. § 404.1520 (2007).  At step one, he found that Cheng had not engaged in substantial gainful activity since July 13, 2006.  AR 37.  At step two, he found that plaintiff had status post cervical fusion and left pilon fracture with residuals, depression, and anxiety disorder, and that these were "severe impairments."  *Id.*  He also found that Plaintiff's alleged memory difficulties and heartburn were "non-severe."  At step three, the ALJ concluded that Plaintiff did not have an impairment listed in or medically equal to one listed in 20 C.F.R. Part 404, Subpart P, Appendix 1 at any period relevant to the decision.  AR 38.  The ALJ evaluated Plaintiff's alleged mental impairments using the Psychiatric Review Technique and found that  Plaintiff had mild restrictions of activities of daily living, mild difficulties in maintaining social functioning, and moderate difficulties in maintaining concentration, persistence or pace.  AR 38.  At step 4, the ALJ found that, from June 13, 2006 through July 19, 2007, plaintiff was disabled.  *Id.*  The ALJ found that, as of July 20, 2007, plaintiff had the residual functional capacity ("RFC") to perform less than a wide range of sedentary work.  AR at 41.  At step five, the ALJ referred to the opinion of Vocational Expert ("VE") Dr. Belchik, who testified at the hearing.  The ALJ found that, since July 20, 2007, Plaintiff could perform the requirements of representative occupations in Bench Packaging and Bench Assembly at the sedentary level, and that such jobs exist in the local and national community.  AR 43.

The Appeals Council denied plaintiff's request for review, and the ALJ's decision became the final decision of the Commissioner.  Plaintiff now seeks judicial review of that decision.

## II. LEGAL STANDARD

Pursuant to 42 U.S.C. 405(g), this court has the authority to review the Commissioner's decision to deny benefits.  The Commissioner's decision will be disturbed only if it is not supported by substantial evidence or if it is based upon the application of improper legal standards.  *Morgan v. Comm'r of Soc. Sec. Admin.*, 169 F.3d 595, 599 (9th Cir. 1999); *Moncada v. Chater*, 60 F.3d 521, 523 (9th Cir. 1995).  In this context, the term "substantial evidence" means "more than a mere scintilla but less than a preponderance - it is such relevant evidence that a reasonable mind might accept as adequate to support the conclusion." *Moncada*, 60 F.3d at 523; see also *Drouin v. Sullivan*, 966 F.2d 1255, 1257 (9th Cir. 1992).  When determining whether substantial evidence exists to support the Commissioner's decision, the court examines the administrative record as a whole, considering adverse as well as supporting evidence.  *Drouin*, 966 F.2d at 1257.  Where evidence exists to support more than one rational interpretation, the court must defer to the decision of the Commissioner. *Moncada*, 60 F.3d at 523; *Drouin*, 966 F.2d at 1258.

## III. DISCUSSION

Plaintiff contends that the ALJ's decision should not be affirmed because (1) the ALJ's RFC assessment is not supported by substantial evidence; (2) the ALJ did not provide "clear and convincing" reasons for rejecting Cheng's testimony regarding pain, functional limitations, memory loss, and depression; and (3) the ALJ failed to consider seven letters provided by third parties.  Plaintiff requests remand for an immediate award of benefits.  Defendant asserts that the ALJ's findings were supported by substantial evidence and free of legal error.

**A. The ALJ's RFC Finding**

**1. Psychological Limitations**

Plaintiff first argues that the ALJ's RFC finding is not supported by substantial evidence because the ALJ did not account for Mr. Cheng's psychological limitations.  Plaintiff argues that, although the ALJ found that Mr. Cheng was suffering from a "moderate" limitation in maintaining concentration, persistence and pace, and that he suffered from depression and anxiety disorder, the

United States District Court
For the Northern District of California

ALJ failed to incorporate these limitations into the hypotheticals presented to the VE, and failed to incorporate these limitations in the ultimate RFC determination. Plaintiff also challenges the ALJ's finding that Mr. Cheng's memory loss was "not severe."

### a. "Moderate" Limitations in maintaining concentration, persistence, and pace

Plaintiff and the Commissioner agree that Mr. Cheng had "moderate" limitations in maintaining concentration, persistence and pace, but the parties disagree on how this finding translates into a limitation on the ability to work. The ALJ found that this moderate limitation did not prevent Mr. Cheng from "understand[ing], remember[ing] and carry[ing] out at least one to two step tasks." AR 41. At the hearing, the ALJ proposed a hypothetical to the VE about an individual who could remember and carry out at least one to two step tasks, and the VE opined that the individual described in the ALJ's hypothetical could perform the Bench Assembly and Bench Packaging jobs. AR 76-77. Mr. Cheng's attorney, on the other hand, claims that a "moderate" limitation in maintaining concentration, persistence and pace means that an individual is unable to maintain concentration, persistence and pace for 50% of the day. AR 80-81. At the hearing, Mr. Cheng's attorney proposed a hypothetical to the VE using her definition, and the VE opined that such an individual would not be able to perform any job. AR 81. The parties disagree over the RFC that follows from a finding of "moderate" limitation in maintaining concentration, persistence and pace, and application of the competing definitions led the VE to contradictory opinions.

The Social Security regulations do not define "moderate" limitation in maintaining concentration, persistence and pace or offer guidance on how this finding translates to a particular RFC finding. The ALJ concluded from the record that Mr. Cheng could understand, remember and carry out at least one to two step tasks, despite his "moderate" limitation. Ida Hilliard, M.D., made the same finding. Dr. Hilliard is a non-examining State agency psychiatrist who based her opinion on a review of Mr. Cheng's medical record. AR 365-71. On March 19, 2007, Dr. Hilliard concluded that Plaintiff had moderate limitations in his ability to understand, remember, and carry out detailed instructions and maintain attention and concentration for extended periods, but was otherwise not significantly limited. AR 365-67. Dr. Hilliard noted there was no record of ongoing

United States District Court
For the Northern District of California

1  psychiatric impairment or treatment in Plaintiff's file, and that the consultative examiner reported

2  minimal objective findings upon examination. AR 370. Dr. Hilliard concluded that Plaintiff was

3  capable of performing "at least simple, one-step and two-step routine tasks." AR 370.

4       The opinions of non-treating or non-examining physicians may serve as substantial evidence

5  when they are consistent with independent clinical findings or other evidence in the record. *Thomas*

6  *v. Barnhart*, 278 F.3d 947, 957 (9th Cir. 2002). The Commissioner points out the consistency

7  between Dr. Hilliard's conclusion and treating physician Dr. Halligan's September 2007 report that

8  states that Plaintiff's memory loss had improved. AR 42, 452. The Commissioner also cites to

9  September and November 2008 reports from treating Social Worker Dr. Suk-Chong Cheung that

10  indicate that Cheng's memory and depression had improved and that he had resumed voluntary

11  Kung Fu instruction during the weekends. AR 476-79, 484.[1] The Commissioner cites this record

12  evidence as further support for the ALJ's finding that, "moderate" limitations in concentration,

13  persistence and pace notwithstanding, Mr. Cheng was able to complete one or two step tasks as of

14  July 2007.

15       This Court is not aware of, and Plaintiff has not presented, any authority in support of his

16  argument that a "moderate" limitation in concentration, persistence or pace means an inability to

17  maintain concentration, persistence or pace for half of the day. Nor does any evidence in the

18  medical record indicate that Plaintiff was limited so severely. Accordingly, the ALJ did not err by

19  disregarding the VE's opinion based on this unsupported definition.

20       Plaintiff's argument also implies a contradiction that does not necessarily exist. A finding of

21  moderate limitation in maintaining concentration, persistence and pace does not dictate a particular

22  RFC finding. An individual's RFC is "the most [a claimant] can still do despite [the claimant's]

23  limitations." 20 C.F.R. § 404.1545(a)(1). An RFC finding describes *capability*, despite limitations.

24  *Id.* At Step 3, the ALJ found that Plaintiff had a moderate limitation in maintaining concentration,

25  persistence and pace. At Step 4, the ALJ found that Plaintiff could perform one to two step tasks

26  *despite* this limitation. These findings are not necessarily at odds with each other. "[A]n ALJ's

27  assessment of a claimant adequately captures restrictions related to concentrations, persistence, or

28

[1] Prior to the accident, Plaintiff was a martial arts master. AR 61-62.

pace where the assessment is consistent with restrictions identified in the medical testimony."

*Stubbs-Danielson v. Astrue,* 539 F.3d 1169, 1174 (9th Cir. 2008) (finding that the ALJ properly

translated claimant's limitations with concentration, persistence or pace by adopting state

psychologist's findings that claimant could perform simple, repetitive, routine tasks despite these

limitations). Here, the ALJ translated claimant's limitations with concentration, persistence or pace

by adopting Dr. Hilliard's findings that Plaintiff could perform one to two step tasks despite these

limitations. AR 365, 37, 41. The Court finds no error with how the ALJ incorporated Plaintiff's

limitations in concentration, persistence or pace into the RFC finding.

### b. Depression and Anxiety Disorder

For similar reasons, this Court rejects Plaintiff's argument that the ALJ did not properly

account for Plaintiff's depression and anxiety disorder in the RFC finding. At Step Two, the ALJ

found that Plaintiff had severe depression and an anxiety discovery. AR 37. At Step Four, the ALJ

found that, nonetheless, as of July 20, 2007, Plaintiff had the RFC to perform less than a wide range

of sedentary work. AR 41. If a an ALJ finds a severe impairment at Step Two, that impairment

must be considered in the remaining steps of the sequential analysis. 20 C.F.R. §§ 404.1523,

416.923. A finding of a severe impairment at Step Two does not, however, necessarily lead to the

conclusion that the individual is disabled, nor does such a finding dictate any corresponding

limitation in a claimant's RFC. *See Bray v. Comm'r of Soc. Sec. Admin*., 554 F.3d 1219, 1228-29

(9th Cir. 2009). An ALJ may relay limitations and severe impairments to a VE by presenting a

hypothetical of an individual with capabilities that a claimant has been found to have, despite

limitations and severe impairments. Similarly, an ALJ may capture limitations and severe

impairments in an ALJ's construction of a claimant's RFC by relying on the conclusions of medical

experts who evaluated the claimant's impairments and limitations. *See Bray*, 554 F.3d at 1228-29

(finding that the ALJ adequately accounted for claimant's severe depression and anxiety in the

ALJ's construction of RFC and in the hypothetical presented to the VE because the ALJ relied on

the conclusions of an evaluating psychiatrist who found that claimant could perform all but the most

detailed and complex tasks in spite of the claimant's severe depression and anxiety).   *Id.*

Here, the ALJ acknowledged Mr. Cheng's depression and anxiety disorder but concluded

that Mr. Cheng could nonetheless perform "less than a wide range of sedentary work," and

presented a hypothetical to the VE of an individual who could understand, remember, and carry out

at least one to two step instructions.  AR 38, 77.  As discussed above, State psychiatrist Dr. Halliard

came to this conclusion about Mr. Cheng's capabilities based on her review of Mr. Cheng's record,

which included medical records of Plaintiff's depression and anxiety disorder.  In this way, the ALJ

adequately captured Plaintiff's severe depression and anxiety in the RFC construction and in the

hypothetical presented to the VE.  The Court finds that the ALJ's hypothetical to the VE adequately

captured Mr. Cheng's depression and anxiety disorder, and that the ALJ's RFC conclusion is

supported by substantial evidence in the record.

### c.  Memory loss

Plaintiff argues that the ALJ erred in finding that Mr. Cheng's memory loss was "not

severe."  An impairment is severe if, alone or in combination with other impairments, it

significantly limits an ability to do basic work activities.  20 C.F.R. § 404.1520(c).  Although the

record includes evidence of Mr. Cheng's complaints about memory loss, and Mr. Cheng testified at

the hearing about his memory loss, the ALJ found that Plaintiff's memory loss was "not severe,"

and discredited some of Plaintiff's testimony.  AR 37, 42.  In discrediting Mr. Cheng's testimony

about the severity and longevity of his memory loss, the ALJ found that Mr. Cheng's "alleged

memory loss does not accord with the evidentiary file."  AR 42.  The ALJ cited to treating physician

Dr. Tom Halligan's September 2007 report, which indicated that Mr. Cheng's memory loss had

improved.  AR 42, 452.  The ALJ also cited September 2008 progress notes from Plaintiff's social

worker, Dr. Cheung, that record improved memory.  AR 42, 477.  The Commissioner also points

out Dr. Hilliard's conclusion that Plaintiff had moderate limitations in his ability to understand,

remember, and carry out detailed instructions and maintain attention and concentration for extended

United States District Court
For the Northern District of California

periods, but was otherwise not significantly limited.  AR  365-67.  Dr. Hilliard noted that there was no record of ongoing psychiatric impairment or treatment in Plaintiff's file, and that the consultative examiner reported minimal objective findings upon examination.  AR 370.  Dr. Hilliard concluded that Plaintiff was capable of performing "at least simple, one-step and two-step routine tasks."  AR 370.  Although the record catalogs Mr. Cheng's complaints of memory loss and memory improvement, substantial evidence supports the ALJ's finding that Mr. Cheng's memory loss, alone or in combination with other impairments, did not significantly limit his ability to do basic work activities.  20 C.F.R. § 404.1520(c).

### 2.  Neck Limitations

Plaintiff also argues that the ALJ's decision did not properly account for Mr. Cheng's neck limitations.  The car accident resulted in multiple injuries to Mr. Cheng's neck (occipital cervical dislocation).  AR 650.  At the hearing, Mr. Cheng testified that his neck was stiff and that he had limited movement.  AR 51-52.   An April 22, 2008 letter from treating physician Dr. Tom Halligan to the Alameda County Social Services Agency stated that Mr. Chenge still had "stiffness in his neck after atlanto-occipital dislocation and subsequent fixation."  AR 462.  When Mr. Cheng's attorney proposed a hypothetical to the VE of an individual *who could not move his head from side to side*, the VE said that such an individual would not be able to perform the bench making position. (79).

The Commissioner argues that Plaintiff fails to cite to any medical evidence indicating that Mr. Cheng had any functional limitations with respect to his neck as of July 2007.  Instead, Plaintiff cites to a treatment record from a month after the accident, and the April 2008 letter from Dr. Halligan, noting that Plaintiff's neck was "stiff." (462, 743-44).  The ALJ found that the record did not support the "severe limitations" in neck position claimed by Plaintiff, and the Court finds no error in the ALJ's analysis, as a "stiff" neck does not necessarily imply immobility, and the consultative examiners found no mobility restrictions in Plaintiff's head or neck.  (*See* III.A.3, *infra.*)

### 3.  Medical Improvement as of July 20, 2007

According to Mr. Cheng, the ALJ did not show psychological or physical improvement in Mr. Cheng's RFC starting July 2007.  As discussed above, the Court finds that the ALJ appropriately incorporated Plaintiff's psychological limitations into the RFC finding by adopting the opinions of those who analyzed these limitations.  As to physical limitations, Mr. Cheng says the ALJ erred by adopting the RFC assessments of two consultative examiners, despite evidence provided by treating sources.

The opinion of a treating physician generally is given more deference than the opinion of non-treating physician because a treating physician is deemed likely to be the medical professional most able to provide a detailed, longitudinal picture of the claimant's impairment.  20 C.F.R. § 416.927(d)(2).  A treating physician's opinion, however, is not binding on an ALJ with respect to the existence of an impairment or the ultimate determination of disability.  *Thomas v. Barnhart*, 278 F.3d 947, 956 (9th Cir. 2002) (citing *Morgan*, 169 F.3d at 600).  Indeed, the determination as to whether an individual is disabled is reserved specifically to the Social Security Administration.  20 C.F.R. § 416.927(e).  If the treating physician's opinion is controverted, the ALJ may reject that opinion only by making "'findings setting forth specific, legitimate reasons for doing so that are based on substantial evidence in the record.'" *Lester v. Chater*, 81 F.3d 821, 831 (9th Cir. 1995) (quoting *Magallanes*, 881 F.2d at 751).  "The ALJ can 'meet this burden by setting out a detailed and thorough summary of the facts and conflicting clinical evidence, stating his interpretation thereof, and making findings.'" *Id.*  "The ALJ must do more than offer his own conclusions.  He must set forth his own interpretations and explain why they, rather than the doctors', are correct." *Regennitter v. Comm'r of the Soc. Security Admin.*, 166 F.3d 1294, 1299 (9th Cir. 1999) (quoting *Embrey v. Bowen*, 849 F.2d 418, 421-22 (9th Cir. 1988)).

In support of his finding that medical improvement increased Mr. Cheng's RFC as of July 20, 2007, the ALJ relied on reports from the consultative examinations performed by Drs. Calvin Pons and Landrus Pfeffinger, both orthopedists.  The ALJ also relied on examination and progress notes from Plaintiff's treating orthopedic surgeon, his treating physician, and his treating social worker.

1      Dr. Pons examined Mr. Cheng on March 20, 2007.  Based on the examination, Dr. Pons

2  concluded that Mr. Cheng should be able to stand or walk at least short distances without the use of

3  bilateral crutches for a total of two to four hours during an eight-hour workday, and sit for a total of

4  six hours in an eight-hour workday. AR 374.  Dr. Pons stated that Mr. Cheng should avoid ladders,

5  is limited to occasional crouching, kneeling, squatting and climbing stairs, and has no limitation in

6  stooping.  *Id.*  Dr. Pons opined that Mr. Cheng had no restriction in pushing or pulling with his arms

7  or right leg, and that he should push with his left leg on a rare to occasional basis.  *Id.*  Dr. Pons also

8  opined that, without the use of bilateral crutches, Mr. Cheng could lift and carry up to 20 pounds

9  occasionally and 10 pounds frequently.  Dr. Pons found no limitation in Mr. Cheng's bilaterally

10  reaching or his ability to perform gross and fine manipulative tasks with both hands.  AR 374.

11      The ALJ found that Dr. Pons' examination suggested that Mr. Cheng's RFC may have

12  increased as early as March 20, 2007.  AR 41.  The ALJ gave Mr. Cheng "the benefit of the doubt,"

13  however, and found that Mr. Cheng's medical improvement occurred on July 20, 2007.  *Id.*  On that

14  date, Dr. Thomas Chi, Plaintiff's treating orthopedic surgeon, examined Plaintiff and found him to

15  be "extremely physically fit."  AR 407.  Dr. Chi also found that Plaintiff had "largely regained

16  function of his body and bodily control."  *Id.*

17      The ALJ cited other parts of the medical record in support of his RFC finding and as reasons

18  for not fully crediting Mr. Cheng's testimony that he had difficulty balancing and an inability to

19  stand or walk for any significant period of time without crutches, and only up to 30 minutes with

20  crutches.  AR 42.  The ALJ noted October 2006 reports from treating physician Dr. Halligan's

21  office, which recorded Mr. Cheng exercising two hours per day, seven days per week, engaging in

22  Tai Chi, weight-lifting, and biking.  AR 41, 434.  The ALJ also cited to multiple reports that record

23  Mr. Cheng as swimming four to five times per week at a YMCA pool.  AR 41, 431, 456, 462.  The

24  ALJ regarded the progress notes of Plaintiff's treating social worker, Dr. Cheung, which report that

25  Plaintiff resumed teaching Kung Fu for a period beginning in August 2007, and again in November

26  2008.  AR 41, 425, 450, 476.  Finally, the ALJ cited to the report of another consultative examiner,

27  I.J. Newton, MD, who examined Plaintiff on March 20, 2007.  AR 42, 376.  Dr. Newton opined that

28  Plaintiff could frequently lift and carry 10 pounds, occasionally lift and carry 20 pounds, stand or

United States District Court
For the Northern District of California

walk for at least two hours in an eight-hour workday, sit for a totally of about six hours in an 8-hour

work day, but was limited in pushing and pulling with his lower extremities. AR 376. Dr. Newton

concluded that Plaintiff could frequently balance, and occasionally climb stairs, stoop, kneel, and

crouch. AR 377. Dr. Newton found no manipulative or visual limitations. *Id.* The ALJ cited these

parts of the record in support of his RFC finding but also as examples of the inconsistencies in the

record and as grounds for discrediting some of Plaintiff's testimony at the hearing. "Although I

appreciate the claimant's apparent commitment to his rehabilitation following the vehicle accident, I

do not find his testimony to be fully credible given such inconsistencies with the written record."

AR 42.

        The ALJ referenced the report of another consultative examiner, orthopedist Dr. Pfeffinger.

AR 42. Dr. Pfeffinger examined Plaintiff in July 2008 and found that Plaintiff could lift or carry up

to 20 pounds occasionally and 10 pounds frequently. AR 804, 806. Dr. Pfeffinger opined that

Plaintiff could stand or walk for less than two hours in an eight-hour work day and that he had no

limitation in his ability to sit. AR 806. Dr. Pfeffinger found that Plaintiff would have difficulty

using pedals, so was limited in pushing or pulling with his lower extremities. *Id.* Because it could

increase pain in arthritic joints, Dr. Pfeffinger advised that Plaintiff avoid concentrated exposure to

cold. AR 807. The ALJ "did not find Dr. Pfeffinger's evaluation controlling," because it was based

on a single visit with Plaintiff. AR 42. Instead, the ALJ referred to the medical record as a whole in

support of his RFC finding, which was that:

> As of July 20, 2007, Plaintiff had the RFC to lift and carry up to ten pounds occasionally and
> less than ten pounds frequently; stand or walk for two hours total in an eight-hour day; sit for
> six hours total in an eight hour day; occasionally climb stairs and ramps; occasionally stoop,
> kneel, and crouch; and never climb ropes, ladders , or scaffolds. In addition, the claimant
> should avoid the hazards of unprotected heights, and he is limited in his ability to push or
> pull with his left leg to twenty pounds occasionally and ten pound frequently. The claimant
> can understand, remember, and carry out at least one to two step tasks. This residual
> functional capacity allows for the occasional use of a cane or crutches.

United States District Court
For the Northern District of California

AR41.  The ALJ noted that this RFC finding is more restrictive than the RFCs suggested by

Plaintiff's consultative examiners Drs. Pons and Pfeffinger, who both opined that Plaintiff could lift

or carry up to 20 pounds occasionally.[2]

Although not necessarily contradictory evidence, Plaintiff cites to the other parts of Dr. Chi's

July 20, 2007 report, in support of the argument that the ALJ did not give proper weight to the

opinions of treating physicians.  Dr. Chi diagnosed Mr. Cheng with post-traumatic arthritis of the

left ankle following a pilon fracture.  AR 407.  Dr. Chi opined:

> Not much to do about the nerve injury other than perhaps medications and [Mr. Cheng]
> seems to be getting along with this.  His ankle still bears weight and has not collapsed.
> However he is going on to post-traumatic arthrosis and we already see some broken wires on
> the plain x-rays from Dr. Shapiro's office.  I suspect that over time he will slowly get worse
> and worse in this area.  In addition, he has a bit of a cavitary defect from segmental bone loss
> which did not heal in completely with his calcium carbonate/phosphate fillers and this may
> need to be bone grafted especially in light of requirement for bridging for eventual fusion.
> In the end I do think he will eventually come to an ankle fusion and timing of this would be
> largely dependent on how he recovers from his injury over time and how his pain progresses.
> . . He will contact me as his symptoms worsen.

AR 407.  Plaintiff also cites to the note of podiatrist Dr. Kam Y. Wong, who, on October 17, 2008,

diagnosed Cheng with left ankle Degenerative Joint Disease and right knee pain.  Although these

records indicate that Plaintiff still suffers from his injuries, they do not necessarily contradict the

ALJ's RFC finding.

An April 22, 2008 letter from treating physician Dr. Halligan to the Alameda County Social

Service Agency does contradict the ALJ's finding, however.  In the letter, Dr. Halligan opines that

Mr. Cheng "is temporarily unemployable for the next six months."  AR 462.  Although the record

contains evidence that the injuries caused by the car accident continue to affect Mr. Cheng's life,

and includes some contradictory evidence about Plaintiff's ability to work, the ALJ set forth

"specific, legitimate reasons," in support of his RFC finding, and those reasons are supported by

---

[2] In any event, according to Dr. Belchik, the VE, the difference between Dr. Pfeffinger's evaluation of Plaintiff's RFC
and the ALJ's evaluation of Plaintiff's RFC does not affect the question of whether Plaintiff is able to engage in
substantial gainful activity.  AR 42.

1   substantial evidence in the record.  *See Lester v. Chater*, 81 F.3d 821, 831 (9th Cir. 1995).  The

2   Court finds that the ALJ did not err by basing his opinion on the opinions of the consultative

3   examiners, and other evidence in the record, in spite of the fact that contradictory evidence also

4   existed in the record.  While there is contradictory evidence in the record, there is also substantial

5   evidence in support of the ALJ's decision, which the ALJ articulated as the basis for his decision.

6

7   **B.  Credibility Determination**

8        Plaintiff claims that the ALJ committed legal error by failing to provide specific reasons for

9   discrediting Mr. Cheng's testimony regarding pain, functional limitations, memory loss, and

10  depression, and that the ALJ erred by prohibiting testimony about Mr. Cheng's fitness prior to the

11  accident.

12       "If the ALJ finds that claimant's testimony as to the severity of [his] pain and impairments is

13  unreliable, the ALJ must make a credibility determination with findings sufficiently specific to

14  permit the court to conclude that the ALJ did not arbitrarily discredit claimant's testimony." *Thomas*

15  *v. Barnhart*, 278 F.3d 947, 958 (9th Cir. 2002); *Moisa v. Barnhart*, 367 F.3d 882, 885 (9th Cir.

16  2004).  "[W]here the record includes objective medical evidence establishing that the claimant

17  suffers from an impairment that could reasonably produce the symptoms of which [he] complains,

18  an adverse credibility finding must be based on 'clear and convincing reasons.'" *Lingenfelter v.*

19  *Astrue*, 504 F. 3d 1028, 1036 (9th Cir. 2007) (quoting *Smolen v. Chater*, 80 F. 3d at 1281.).

20       As discussed above, the ALJ cited numerous and specific reasons for discrediting Mr.

21  Cheng's testimony at the hearing about the severity and extent of some of his physical symptoms.

22  The ALJ also cited specific reasons for discrediting Mr. Cheng's testimony about his psychological

23  symptoms.  In discrediting some of Plaintiff's testimony about the severity and longevity of

24  Plaintiff's depression and memory loss, the ALJ cited treating physician Dr. Tom Halligan's

25  January 2008 note that Plaintiff reported to be in "good spirits," was "euthymic,"[3] and that he would

26  be traveling to Hawaii, China, and Hong Kong for over a month.  AR 42, 460.  The Commissioner

27  also cited progress notes from Plaintiff's social worker, Suk-Chong Cheung, MSW, Ph.D, who

28

---

[3] The medical dictionary at http://dictionary.webmd.com/terms/euthymia defines euthymia as "[m]oderation of mood, not manic or depressed."  *See http://dictionary.webmd.com/terms/euthymia*.

United States District Court
For the Northern District of California

1    reported in January, June, and August 2008 that Plaintiff's depression was stable, and reported in

2    September and November 2008 that Mr. Cheng's memory and depression had improved.   AR 476-

3    79, 484.   The ALJ found that Plaintiff's depression and memory loss improved and were stable,

4    despite Plaintiff's hearing testimony to the contrary.   The ALJ provided clear and convincing

5    reasons for rejecting Plaintiff's testimony.

6         At the hearing, the ALJ asked Mr. Cheng about Dr. Chi's July 2007 assessment of Mr.

7    Cheng as "being extremely physically fit."   AR 53.   In this appeal, Plaintiff argues that the ALJ

8    erred by not allowing Mr. Cheng's attorney to cross examine Plaintiff at the hearing on the

9    discrepancy between Dr. Chi's assessment and Mr. Cheng's testimony.   Plaintiff argues that Dr. Chi

10   found Mr. Cheng to be "extremely physically fit," because *prior* to the accident, Mr. Cheng had

11   been a Kung Fu master.   Under this theory, Plaintiff's prior fitness, and not any medical

12   improvement, led to Dr. Chi's observation of physical fitness.   A review of the hearing shows that

13   the ALJ did allow this testimony in, however:

14        EXAMINATION OF CLAIMANT BY ATTORNEY:

15        Q: Before the accident, you were a martial arts master, is that correct?

16        A: Yes.

17        Q: And so you were I incredible physical shape before the accident?

18        A: Yes.

19   AR 61-62.   The Court finds that the ALJ did in fact allow testimony in support of Plaintiff's theory.

20   Based on a complete record, the ALJ provided specific reasons for discrediting Mr. Cheng's

21   testimony regarding pain, functional limitations, memory loss, and depression.

22   **C.  Third-Party Testimony**

23        Mr. Chen submitted seven letters from fellow Martial Artists and long-time friends who

24   shared their observations of Mr. Cheng after the accident.   AR 398-406.   Plaintiff argues that the

25   ALJ committed legal error by failing to address these third-party letters.

26        Lay witnesses may give evidence "to show the severity of [claimant's] impairment(s) and

27   how it affects [claimant's] ability to work."   20 C.F.R. 404.1513(d).   Lay witness testimony as to a

28   claimant's symptoms "is competent evidence that an ALJ must take into account," unless he

United States District Court
For the Northern District of California

14

"expressly determines to disregard such testimony and gives reasons germane to each witness for doing so." *Lewis v. Apfel*, 236 F.3d 503, 511 (9th Cir. 2001).

The ALJ committed legal error by failing to mention the third-party letters in his decision. The Court has reviewed the letters, however, and, at most, the letters repeat testimony made by Plaintiff at the hearing. As the ALJ cited specific, thorough reasons for discrediting Plaintiff's testimony, the ALJ's legal error was harmless. *See Molina v. Astrue*, 674 F.3d 1104, 1122 (9th Cir. 2012) (finding that an ALJ's failure to comment upon lay witness testimony is harmless where the same evidence that the ALJ referred to in discrediting the claimant's claims also discredits the lay witness's claims) (*citing Buckner v. Astrue*, 646 F.3d 549, 560 (8th Cir. 2011).

## VI. CONCLUSION

For the foregoing reasons, the Court finds that the ALJ's RFC assessment is supported by substantial evidence, that the ALJ provided clear and convincing reasons for rejecting Mr. Cheng's testimony regarding pain, functional limitations, memory loss, and depression, and that, although the ALJ committed legal error by failing to mention third-party letters, this error was harmless. Accordingly, IT IS ORDERED THAT, Plaintiff's motion for summary judgment is DENIED and Defendant's motion for summary judgment is GRANTED.

Dated: March 5, 2013

HOWARD R. LLOYD
UNITED STATES MAGISTRATE JUDGE

**C10-03605 HRL Order will be electronically mailed to:**

Dolly Trompeter                   DMTrompeterESQ@yahoo.com
Lynn Harada                     Lynn.Harada@ssa.gov

**Counsel are responsible for distributing copies of this document to co-counsel who have not registered for e-filing under the court's CM/ECF program.**

**United States District Court**
For the Northern District of California